## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MEHDI MEHRPOOYA,

      *Plaintiff*

    v.

DAVID ALLEN, *et al.*,

      *Defendants*.

Civil Action No. 24-2340 (LLA)

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Mehdi Mehrpooya, a citizen of Iran, seeks to compel Defendants—David Allen, in his official capacity as Deputy Chief of Mission to the U.S. Embassy in Armenia, and Marco Rubio, in his official capacity as Secretary of State—to adjudicate his nonimmigrant visa application. ECF No. 1.[1]  Mr. Mehrpooya contends that his H-1B visa application has been unreasonably delayed in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, and the Mandamus Act, 28 U.S.C. § 1361.  ECF No. 1 ¶¶ 32-53.  Defendants have moved to dismiss Mr. Mehrpooya's complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  ECF No. 5.  The motion is fully briefed, ECF Nos. 5, 6, 8, and Mr. Mehrpooya has moved for leave to file a surreply, ECF No. 9.  For the reasons explained below, the court will grant Mr. Mehrpooya leave to file a surreply and deny Defendants' motion to dismiss.

---

[1] Mr. Mehrpooya named former Secretary of State Antony J. Blinken as a Defendant, but the current Secretary of State is "automatically substituted" as a party pursuant to Federal Rule of Civil Procedure 25(d).

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The court draws the following facts, accepted as true, from Mr. Mehrpooya's complaint. *Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 619 (D.C. Cir. 2023). It further takes judicial notice of "information posted on official public websites of government agencies." *Arab v. Blinken*, 600 F. Supp. 3d 59, 63 n.1 (D.D.C. 2022).

The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, allows employers to sponsor temporary, nonimmigrant workers "in a specialty occupation" for a H-1B visa. 8 U.S.C. §§ 1101(a)(15)(H)(i)(b), 1184(a). An employer begins this process by requesting a "certified labor condition application from the Department of Labor" for the employee's occupational specialty. 8 C.F.R. § 214.2(h)(4)(i)(B)(1)(i). After receiving the certification, the employer must file a Petition for a Nonimmigrant Worker (Form I-129) with U.S. Citizenship and Immigration Services ("USCIS"). *Id.* § 214.2(h)(2)(i)(A); *see* U.S. Dep't of State, *I-129, Petition for a Nonimmigrant Worker*.[2] This visa petition process must be completed before the employee "may apply for a visa." 8 C.F.R. § 214.2(h)(1)(i).

Next, the foreign national must complete the nonimmigrant visa application through the Department of State at the consular office corresponding to the jurisdiction in which they reside. 22 C.F.R. § 41.101(a)(1). Typically, the applicant must then appear for an in-person interview with a consular officer. *Id.* § 41.102. At the conclusion of the interview, "the consular officer must [either] issue [or] refuse the visa." *Id.* § 41.121(a). If the consular officer determines that he does not have sufficient information to establish visa eligibility, he may "refuse" the visa pending further administrative processing under Section 221(g) of the INA, which typically consists of

---

[2] *Available at* https://perma.cc/4WPZ-BKR6.

additional information gathering.  U.S. Dep't of State, *Administrative Processing Information*;[3] *see* 8 U.S.C. § 1201(g); *Giliana v. Blinken*, 596 F. Supp. 3d 13, 18 (D.D.C. 2022).

Consular officers are forbidden from issuing visas to any individual from "a country that is a state sponsor of international terrorism" unless the federal government determines that the applicant "does not pose a threat to the safety or national security of the United States."  8 U.S.C. § 1735(a).  Since 1984, the Secretary of State has designated Iran a "state sponsor of international terrorism."  U.S. Dep't of State, *State Sponsors of Terrorism*.[4]

In March 2023, Texas Tech University initiated Mr. Mehrpooya's H-1B visa application process.  ECF No. 1 ¶ 15.  Later that month, USCIS approved the H-1B petition and Mr. Mehrpooya submitted his DS-160 Nonimmigrant Visa Application.  *Id.* ¶¶ 16-17.  He was interviewed at the U.S. Embassy in Armenia in May 2023.  *Id*. ¶ 18.  After the interview, his application was placed in "administrative processing" under Section 221(g), and he was informed that he would need "to submit additional documents and information."  *Id.* ¶¶ 19-20.  Mr. Mehrpooya provided those documents on May 4, 2023.  *Id*. ¶ 20.  Since then, he "has inquired as to the status of his visa application on numerous occasions and received no meaningful responses."  *Id.* ¶ 24.

Defendants contend that Mr. Mehrpooya's visa application was "refused because Section 1735 mandated as much."  ECF No. 5, at 1.  Mr. Mehrpooya maintains that "the rationale given to [him] was pursuant to INA § 221(g)."  ECF No. 6, at 6.[5]

---

[3] *Available at* https://perma.cc/P9SW-QX99.

[4] *Available at* https://perma.cc/KB3Z-PVY2.

[5] The citations for ECF No. 6 refer to the PDF page numbers because the document does not contain internal page numbers.

The delay in the adjudication of his visa since March 2023 has caused Mr. Mehrpooya "significant personal, emotional, and financial hardship." ECF No. 1 ¶ 3. He alleges that the delay has damaged his professional relationships at his current employer and imperiled the grant funding that sustains his work. *Id.* ¶¶ 4, 6. Mr. Mehrpooya also alleges that his new position at Texas Tech may be terminated because of the uncertainty about his visa status. *Id.* ¶ 4.

In August 2024, Mr. Mehrpooya filed a complaint seeking to compel Defendants to adjudicate his visa application. ECF No. 1. Defendants have moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See* ECF No. 5. The matter is fully briefed, ECF Nos. 5, 6, 8, and Mr. Mehrpooya has moved for leave to file a surreply, ECF No. 9.

## II.      LEGAL STANDARDS

### A.      Federal Rule of Civil Procedure 12(b)(1)

"Federal courts are courts of limited jurisdiction," and it is generally presumed that "a cause lies outside [of] this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Under Federal Rule of Civil Procedure 12(b)(1), the court must dismiss an action unless the plaintiff can establish, by a preponderance of the evidence, that the court possesses subject-matter jurisdiction. *Green v. Stuyvesant*, 505 F. Supp. 2d 176, 177-78 (D.D.C. 2007). In reviewing such a motion, the court "is not limited to the allegations set forth in the complaint" and "'may consider materials outside the pleadings.'" *Morrow v. United States*, 723 F. Supp. 2d 71, 76 (D.D.C. 2010) (quoting *Jerome Stevens Pharms., Inc. v. Food & Drug Admin.,* 402 F.3d 1249, 1253 (D.C. Cir. 2005)). Additionally, when reviewing a motion to dismiss pursuant to Rule 12(b)(1), the court is required to "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that

can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. Fed. Deposit Ins. Corp.*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).

**B.     Federal Rule of Civil Procedure 12(b)(6)**

Under Rule 12(b)(6), the court will dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion under Rule 12(b)(6), the court accepts all well-pleaded factual allegations in the complaint as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Atherton v. D.C. Off. of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009). Although the plausibility standard does not require "detailed factual allegations," it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor will "'naked assertion[s]' devoid of 'further factual enhancement'" suffice. *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

In determining whether a complaint fails to state a claim, a court may consider only the facts alleged in the complaint and "any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020) (alteration in original) (quoting *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017)).

**III.     DISCUSSION**

The court can easily dispense with Mr. Mehrpooya's motion for leave to file a surreply, ECF No. 9, because Defendants do not oppose it. Under Local Civil Rule 7(b), if an opposing

party does not timely oppose a motion, "the Court may treat the motion as conceded."  That is the case here, and the court will direct the Clerk of Court to docket ECF No. 9-1 as Mr. Mehrpooya's surreply.

On the merits, Defendants raise two primary challenges to Mr. Mehrpooya's claims: (1) that the doctrine of consular nonreviewability bars consideration of his claims, ECF No. 5, at 9-13; and (2) that Mr. Mehrpooya fails to identify a discrete agency action that Defendants were obligated to, but did not, take, *id.* at 5-9.[6]  The court considers each argument in turn.

### A.    Consular Nonreviewability

Defendants argue that the court must dismiss under Rule 12(b)(6) based on the doctrine of consular nonreviewability.  ECF No. 5, at 9.[7]  In the context of visa adjudications, "[c]onsular nonreviewability shields a consular official's decision to issue or withhold a visa from judicial review, at least unless Congress says otherwise."  *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021); *see Dep't of State v. Muñoz*, 602 U.S. 899, 908 (2024).  However, "a long line of decisions from this Court have held that the consular nonreviewability doctrine applies only to final decisions and thus does not bar judicial review of a consular officer's delay when a visa application has been provisionally refused pending a final decision."  *Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 11 (D.D.C. 2022) (collecting cases).

---

[6] In a departure from similar cases, Defendants do not argue for dismissal based on the factors set forth in *Telecommunications Research & Action Center v. Federal Communications Commission*, 750 F.2d 70, 79 (D.C. Cir. 1984) ("*TRAC*"), the very analysis *required* to evaluate a claim of unreasonable delay.  ECF No. 5, at 1-2.  Instead, in a footnote, Defendants claim that they will move for judgment on the pleadings based on the *TRAC* factors *if* the court denies their motion to dismiss.  *Id.* at 2 n.1.  While allowed by the Federal Rules of Civil Procedure, Defendants' approach strikes the court as an exercise in gamesmanship that increases litigation costs for the parties and taxes limited judicial resources.  The court encourages Defendants to litigate more efficiently in the future.

[7] It is well established that the doctrine of consular nonreviewability is not jurisdictional.  *See Dep't of State v. Muñoz*, 602 U.S. 899, 908 n.4 (2024).

In response to this longstanding precedent, Defendants point to the D.C. Circuit's decision in *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852, at *3 (D.C. Cir. July 24, 2024), arguing that while there may have previously been "some debate . . . as to whether the doctrine applie[s] in cases seeking to compel action on visa applications in post-refusal administrative processes, *Karimova* necessitates an end to that debate," ECF No. 5, at 11. In Defendants' view, *Karimova* conclusively establishes that where a visa application has been refused under Section 221(g) and placed in administrative processing, a final decision has been rendered on the application. ECF No. 8, at 3, 11; *see Karimova*, 2024 WL 3517852, at *2-3, *6. The court disagrees.

As an initial matter, the court notes—contrary to Defendants' assertion, ECF No. 5, at 6 n.2; ECF No. 8, at 1-2—that the D.C. Circuit's decision in *Karimova* does not bind it. The D.C. Circuit has twice declined to publish *Karimova*. *See Karimova*, 2024 WL 3517852, at *6; Order, *Karimova v. Abate*, No. 23-5178 (D.C. Cir. Sep. 10, 2024), Doc. No. 2074062, at 1. Under the D.C. Circuit's rules, "[w]hile unpublished dispositions *may* be cited[,] . . . a panel's decision to issue an unpublished disposition means that the panel *sees no precedential value* in that disposition." D.C. Cir. R. 36(e)(2) (emphases added).[8] This court takes the D.C. Circuit at its word and considers, but does not find itself bound by, *Karimova*.

---

[8] Defendants cite D.C. Circuit Rule 32.1(b)(1)(B) for the proposition that unpublished opinions "may be cited as precedent," ECF No. 8, at 1-2 (quoting D.C. Cir. R. 32.1(b)(1)(B)), which is true as far as it goes. But as the D.C. Circuit has explained—in a published opinion that is binding on this court—"[w]hile [unpublished] dispositions have some precedential value, they are 'obviously . . . not of the same precedential value as would be an opinion of this Court treating the question on the merits.'" *In re Grant*, 635 F.3d 1227, 1232 (D.C. Cir. 2011) (quoting *Edelman v. Jordan*, 415 U.S. 651, 671 (1974)). Accordingly, these decisions "may be considered persuasive authority, but they do not constrain a panel of the [C]ourt from reaching a contrary conclusion in a published opinion after full consideration of the issue." *Id.* Other than their say-so, ECF No. 8, at 1-2, Defendants have pointed to no authority suggesting that this court should take a different approach.

Having considered *Karimova*, the court is not inclined to follow it. In *Karimova*, the plaintiff was in a position substantially similar to Mr. Mehrpooya's: she had applied for a visa, interviewed at an embassy, had her application "officially 'refused'" under Section 221(g), and then had her application placed in administrative processing. 2024 WL 3517852, at *2 (quoted sources omitted). Relying on various regulations and the Department of State's Foreign Affairs Manual ("FAM"), the D.C. Circuit reasoned that placing an application in administrative processing must be a "final" decision because a relevant regulation instructed that a consular officer "*must* issue" or "refuse" a visa following an interview, *id.* at *1 (emphasis in *Karimova*) (quoting 22 C.F.R. § 42.81(a)), and because the FAM directed that, after an interview, "[c]onsular officers 'cannot temporarily refuse, suspend, or hold the visa for future action,'" *id.* (quoting 9 FAM § 504.1-3(g)). Drawing on these sources, the D.C. Circuit characterized Ms. Karimova as requesting "yet another 'final decision' on her already-refused visa application," as opposed to a final decision in the first instance. *Id.* at *6.

This interpretation places too much emphasis on the current language in the FAM—which does not carry the force of law, *see Aramnahad v. Rubio*, No. 24-CV-1817, 2025 WL 973483, at *7 (D.D.C. Mar. 31, 2025)—and too little emphasis on the allegations in a plaintiff's complaint and the realities of the visa-adjudication process, *see Al-Gharawy*, 617 F. Supp. 3d at 16 ("Although the State Department may 'choose[] to *characterize* a section 221(g) notification as a "refusal,"' that magic word is not a get-out-of-review-free card . . . . [and] the Court must examine [a plaintiff's] allegations to determine whether the complaint sufficiently alleges that the consular officer's 'refusal' was in fact an 'interim decision [that] is not sufficiently final to warrant the application of the [consular nonreviewability] doctrine.'" (citation omitted) (quoting *Vulupala v. Barr*, 438 F. Supp. 3d 93, 98 (D.D.C. 2020))). It is impossible to square Defendants' assertion

that placement in "administrative processing" was a *final* disposition of Mr. Mehrpooya's visa application with the allegations in his complaint. Mr. Mehrpooya alleges that, after his interview, he "was informed that [his] visa application was being placed in so-called 'administrative processing,'" ECF No. 1 ¶ 19, and he "was requested to submit additional documents and information to the U.S. Embassy in Armenia," *id.* ¶ 20. Accepting these allegations as true and drawing all inferences in Mr. Mehrpooya's favor—as this court must, *see Iqbal*, 556 U.S. at 678— Mr. Mehrpooya has sufficiently alleged that he has not yet received a final decision on his visa application, *see Aramnahad*, 2025 WL 973483, at *8; *cf. Ibrahim v. Spera*, No. 23-CV-3563, 2024 WL 4103702, at *3 n.2 (D.D.C. Sep. 6, 2024) (noting "that it is extremely difficult to square [*Karimova*'s] analysis, which is based largely on agency regulations, with the communications that visa applicants actually receive from various consulates").[9]

Mr. Mehrpooya does not challenge a final decision denying his visa application, nor does he contend that this court should order the State Department to grant his application. *See generally* ECF No. 1. Rather, he argues only that Defendants must "adjudicate [his] visa application within a reasonable time." *Id.* ¶ 53. Several courts in this district have found, even after *Karimova*, that

---

[9] The court's conclusion that placement in administrative processing under Section 221(g) is not a final determination is underscored by language on the Department of State's website, of which the court takes judicial notice. *See Arab*, 600 F. Supp. 3d at 63 n.1. The website explains that an application is placed in administrative processing when "[t]he consular officer could not conclude [a person] w[as] eligible [sic] for the visa sought and additional administrative processing of [the] application is required." U.S. Dep't of State, *INA Section 221(g) – Incomplete Application or Supporting Documentation*, https://perma.cc/F733-BHCT. It further elaborates that a person who is placed in administrative processing "will be given a letter stating this" and "the embassy or consulate will contact [him] when the administrative processing is complete." *Id.* An inability to "conclude" whether a person is eligible for a visa is plainly different from a conclusive determination that a person is ineligible for a visa. And the language on the website, which instructs applicants to wait for the embassy or consulate to contact them after administrative processing is complete, supports the court's conclusion that an applicant in this position is still awaiting a final decision on his application.

"the doctrine of consular nonreviewability does not bar challenges to timing as opposed to substance." *de Belinay v. Mayorkas*, No. 24-CV-240, 2025 WL 671120, at *4 (D.D.C. Mar. 3, 2025) (quoting *Shabestary v. Sanders*, No. 24-CV-362, 2024 WL 5118229, at *3 (D.D.C. Dec. 16, 2024)); *see, e.g.*, *Thein v. Trump*, No. 25-CV-2369, 2025 WL 2418402, at 7-10 (D.D.C. Aug. 21, 2025); *Shushkov v. Rubio*, No. 24-CV-2265, 2025 WL 2389939, at *4 (D.D.C. Aug. 18, 2025); *Diabin v. Rubio*, No. 24-CV-3374, 2025 WL 1824841, at *3 (D.D.C. July 2, 2025); *Aramnahad*, 2025 WL 973483, at *10; *Mahmoodi v. Altman-Winans*, No. 24-CV-2010, 2025 WL 763754, at *4-6 (D.D.C. Mar. 11, 2025); *Baygan v. Blinken*, No. 23-CV-2840, 2024 WL 3723714, at *4-5 (D.D.C. Aug. 8, 2024). *But see Rezvani v. Rubio*, No. 24-CV-3381, 2025 WL 1293358, at *2 (D.D.C. May 5, 2025) (noting that "the consular non-reviewability doctrine would likely apply" but dismissing suit for failure to demonstrate a non-discretionary duty).

This court follows the majority view and determines that Mr. Mehrpooya's action is properly understood as an attempt to compel an adjudication that has been unreasonably delayed, rather than one aimed at changing a final decision that has already been rendered. Accordingly, the case is not barred by the doctrine of consular nonreviewability.

### B.    Non-Discretionary Duty

Defendants also contend that Mr. Mehrpooya has failed to allege that "the government agency or official is violating a clear duty to act"—a threshold requirement for a mandamus claim and a merits question for a claim of unreasonable delay under the APA. *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016); *see* ECF No. 5, at 5.[10]    Defendants argue that

---

[10] Defendants waffle on whether they are seeking dismissal on this basis under Rule 12(b)(1) or Rule 12(b)(6) and fail to parse through the individual counts in the complaint. *Compare* ECF No. 5, at 5 (asking for a dismissal with prejudice concerning non-discretionary duty), *with* ECF No. 8, at 9 (requesting dismissal "for lack of subject-matter jurisdiction" on the "unreasonable

(*continued on next page*)

Mr. Mehrpooya "cannot identify a clear, non-discretionary duty requiring a consular officer to take any action" on his visa application "now that it has been refused under INA Section 221(g)" and placed in administrative processing. ECF No. 5, at 5. As support for this proposition, Defendants again point to *Karimova*, which they argue is "dispositive" in cases like this one, where "[p]laintiffs seek to compel State Department officials to act further on visa applications refused under INA Section 221(g) and undergoing post-refusal administrative processing." *Id.* at 6-7.[11]

In *Karimova*, the D.C. Circuit held that the plaintiff had "not identified an adequate legal basis" for her action seeking to "compel[] the consular officer overseeing her visa application to make yet another 'final decision' on her already-refused visa application." 2024 WL 3517852, at *6. The Court characterized the plaintiff as "argu[ing] that Section 555(b) [of the APA]—and *only* Section 555(b)—'places a clear, non-discretionary duty' on her consular officer to re-adjudicate her already-refused application." *Id.* at *3. The Court easily determined that

---

delay" claim because Plaintiff did not establish a non-discretionary duty). Under the Mandamus Act, a plaintiff must show (1) "a clear and indisputable right to relief," (2) that the government "is violating a clear duty to act," and (3) "that no adequate alternative remedy exists" in order to establish jurisdiction. *Burwell*, 812 F.3d at 189. The court will thus review Count II under the Rule 12(b)(1) standard. In contrast, under the APA, the question whether a non-discretionary duty exists is not jurisdictional. *See Sierra Club v. Jackson*, 648 F.3d 848, 854 (D.C. Cir. 2011) (explaining that "a complaint seeking review of agency action 'committed to agency discretion by law,' has failed to state a claim under the APA, and therefore should be dismissed under Rule 12(b)(6), not under the jurisdictional provision of Rule 12(b)(1)" (citation omitted) (quoting 5 U.S.C. § 701(a)(2))). The court will thus review Count I under the Rule 12(b)(6) standard.

[11] Defendants also argue that Mr. Mehrpooya's visa was refused under Section 1735 because Iran is a state sponsor of terrorism and that such a determination is final. ECF No. 8, at 4. But Mr. Mehrpooya alleges that his application was placed in administrative processing under Section 221(g), ECF No. 1 ¶¶ 19, 21, and that no other rationale was provided, *see* ECF No. 6, at 6. The court must credit those allegations in considering Defendants' motion to dismiss. *Iqbal*, 556 U.S. at 678. But even if Section 1735 were the basis on which Mr. Mehrpooya's visa application was placed in administrative processing, it does not change the fact that Mr. Mehrpooya is seeking a final adjudication of his visa application in the first instance. *See Kahbasi v. Blinken*, No. 23-CV-1667, 2024 WL 3202222, at *5 (D.D.C. June 27, 2024) (rejecting a similar argument).

"Section 555(b) does no such thing" and instead "simply expresses 'a congressional view that agencies should act within reasonable time frames.'" *Id.* (quoting *Telecomms. Rsch. & Action Ctr. v. Fed. Commc'ns Comm'n*, 750 F.2d 70, 77 (D.C. Cir. 1984) ("*TRAC*")).

The problem for Defendants is that this rationale is wholly inapplicable given this court's understanding of the visa process. *See supra* Part III.A. It may be true that Section 555(b) does not create a duty to *re*-adjudicate a final decision where one has already been made, but, as this court sees it, that is not what plaintiffs like Mr. Mehrpooya (or Ms. Karimova) are seeking. Instead, they are seeking an initial, final determination on their visa applications. In this way, any discussion of how Section 555(b) applies to requests to re-adjudicate final visa decisions means very little for a plaintiff who seeks an initial final decision and wishes for it to be made "within [a] reasonable time frame[]" as Section 555(b) requires. *TRAC*, 750 F.2d at 77.

Here, Mr. Mehrpooya alleges that a nondiscretionary duty to adjudicate his visa application can be located in a range of statutes and agency regulations, including 5 U.S.C. § 555(b), 8 U.S.C. § 1202(d), 22 C.F.R. § 41.121, and other provisions in the APA and INA. ECF No. 1 ¶¶ 34-41, 49-50. Several courts in this district have concluded that there is a duty to complete adjudication of a visa application, explaining "that both the APA and State Department regulations create a clear duty to adjudicate visa applications within a reasonable time." *Rashidian v. Garland*, No. 23-CV-1187, 2024 WL 1076810, at *5 (D.D.C. Mar. 8, 2024); *see e.g.*, *Thein*, 2025 WL 2418402, at *11; *Shushkov*, 2025 WL 2389939, at *5-6; *Diabin*, 2025 WL 1824841, at *3-4; *Aramnahad*, 2025 WL 973483, at *8-10; *Kahbasi v. Blinken*, No. 23-CV-1667, 2024 WL 3202222, at *5 (D.D.C. June 27, 2024); *Ameer v. Schofer*, No. 23-CV-3066, 2024 WL 2831464, at *4 (D.D.C. June 4, 2024); *Vulupala*, 438 F. Supp. 3d at 100. *But see, e.g.*, *Pour v. Rubio*, No. 25-CV-573, 2025 WL 2374559, at *4-5 (D.D.C. Aug. 14, 2025); *Younus v. Palmer*,

No. 24-CV-2333, 2025 WL 2192738, at *3 (D.D.C. Aug. 1, 2025); *Seifan v. Sweeney*, No. 25-CV-261, 2025 WL 2171093, at *4-5 (D.D.C. July 31, 2025); *Rahiminejad v. Rubio*, No. 24-CV-3495, 2025 WL 2144092, at *2-4 (D.D.C. July 29, 2025); *Pasiukevich v. Lawton*, No. 24-CV-3349, 2025 WL 2023207, at *3-4 (D.D.C. July 17, 2025).

This court continues to adhere to the view that consular officials have a non-discretionary duty to fully adjudicate a visa application. Issuing a final decision on a visa application is plainly a discrete agency action, and it is required by both the APA and federal regulations. *See Khazaei v. Blinken*, No. 23-CV-1419, 2023 WL 6065095, at *6 (D.D.C. Sep. 18, 2023); *see also Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1099 (D.C. Cir. 2003) (explaining that the APA "imposes a general but nondiscretionary duty upon an administrative agency to pass upon a matter presented to it 'within a reasonable time,' 5 U.S.C. § 555(b), and authorizes a reviewing court to 'compel agency action unlawfully withheld or unreasonably delayed,' *id.* § 706(1)").

Even if the court read *Karimova* with the D.C. Circuit's understanding that Section 221(g) refusals are final, it would still deny Defendants' motion to dismiss. That is because—even taking the argument on the D.C. Circuit's own terms—the Court did not rule that *no* source of law creates a nondiscretionary duty to re-adjudicate a visa application, just that "Section 555(b)—and *only* Section 555(b) . . . does no such thing." 2024 WL 3517852, at *3. Setting Section 555(b) aside, Mr. Mehrpooya has cited additional sources of law that he contends establish a nondiscretionary duty to adjudicate his visa application. ECF No. 1 ¶¶ 34-41, 49-50. At this early stage of litigation, that is sufficient.

\*      \*      \*

Because Mr. Mehrpooya's claims are not barred by the doctrine of consular nonreviewability, because Mr. Mehrpooya seeks a final determination on his visa application by

pointing to several sources of law creating a nondiscretionary duty for Defendants to make such a decision, and because Defendants fail to otherwise contest Mr. Mehrpooya's claims of unreasonable delay, the court will deny Defendants' motion to dismiss and allow Mr. Mehrpooya to proceed with his complaint.[12]

## IV.    CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Plaintiff's Motion for Leave to File Surreply, ECF No. 9, is **GRANTED**, and the Clerk of Court shall docket ECF No. 9-1 as Plaintiff's surreply.  It is further **ORDERED** that Defendants' Motion to Dismiss, ECF No. 5, is **DENIED**, and Defendants shall respond to the complaint on or before September 18, 2025, Fed. R. Civ. P. 12(a)(4)(A).  Defendants do not need to comply with Local Civil Rule 7(n) at this time.

_____
LOREN L. ALIKHAN
United States District Judge

Date: September 4, 2025

---

[12] Defendants are correct that, because this case involves agency *inaction*, they are relieved of their obligation under Local Civil Rule 7(n) to file a "certified list of the contents of the administrative record."  *See Janay v. Blinken*, 743 F. Supp. 3d 96, 105 (D.D.C. 2024); *Dastagir v. Blinken*, 557 F. Supp. 3d 160, 164 n.5 (D.D.C. 2021); *Nat'l L. Ctr. on Homelessness & Poverty v. U.S. Dep't of Veterans Affs.*, 842 F. Supp. 2d 127, 130 (D.D.C. 2012).